# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| GRANT O. ADAMS, et al., |
| Plaintiffs, |
| v. |
| UNITED STATES OF AMERICA, et al., |
| Defendants. |

Civil Action 10-01646 (HHK)

## MEMORANDUM OPINION

Plaintiffs, a group of commercial pilots, bring this action against the United States, Secretary of Transportation Ray Lahood, and Administrator of the Federal Aviation Administration ("FAA") J. Randolph Babbitt, challenging the constitutionality of certain provisions of the Fair Treatment for Experienced Pilots Act ("FTEPA" or "the Act"), Pub. L. No. 110-135, 121 Stat. 1450 (2007) (codified as amended in scattered sections of 49 U.S.C.). Plaintiffs also seek judicial review of the FAA's implementation of FTEPA under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Before the Court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion must be granted.

## I. BACKGROUND

From 1959 to 2007, FAA's "age-sixty rule" prohibited pilots from flying commercial airliners after their sixtieth birthdays. *See* 14 C.F.R. § 121.383(c) (2006). In December 2007,

Congress enacted FTEPA, which increased the age limit from sixty to sixty-five. 49 U.S.C. § 44729(a). FTEPA includes a "nonretroactivity" provision that allows a pilot who had already turned sixty before the statute's enactment but is not yet sixty-five to return to work, but only if:

> (A) such person is in the employment of [an] air carrier in [covered] operations on [FTEPA's] date of enactment as a required flight deck crew member; or
>
> (B) such person is newly hired by an air carrier as a pilot on or after such date of enactment without credit for prior seniority or prior longevity for benefits or other terms related to length of service prior to the date of rehire under any labor agreement or employment policies of the air carrier.

*Id*. § 44729(e)(1). The effect of paragraph (B) is to allow pilots who had been forced to retire by the age-sixty rule to return to work, but as the most junior pilots in their organizations. *See Jones v. Air Line Pilots Ass'n*, 713 F. Supp. 2d 29, 32 (D.D.C. 2010), *aff'd* 2011 WL 2417140 (D.C. Cir. June 17, 2011).

> FTEPA also contains a so-called protection-for-compliance provision, which provides:
>
> An action taken in conformance with this section, taken in conformance with a regulation issued to carry out this section, or taken prior to the date of enactment of this section in conformance with section 121.383(c) of title 14, Code of Federal Regulations (as in effect before such date of enactment), may not serve as a basis for liability or relief in a proceeding, brought under any employment law or regulation, before any court or agency of the United States or of any State or locality.

49 U.S.C. § 44729(e)(2). This provision serves to shield employers from liability for complying with FTEPA's requirements.

Plaintiffs filed this action on September 28, 2010, alleging that FTEPA has barred them from returning to work with the seniority and benefits to which they are entitled. *See* Compl. ¶¶ 274, 293. They further allege that this loss of seniority will preclude them from piloting the types of large commercial aircraft that they were qualified to fly prior to turning sixty. Compl. ¶ 272.

## II. LEGAL STANDARDS

### A. Lack of Subject-Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . ."). In response to such a motion, the plaintiff must establish that the court has subject-matter jurisdiction over the claims in the complaint. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). If the plaintiff is unable to do so, the Court must dismiss the action. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citing *Ex parte McCardle*, 7 Wall. 506, 514 (1868)). When resolving a motion made under Rule 12(b)(1), a court may consider material beyond the allegations in the plaintiff's complaint. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

### B. Failure to State a Claim Upon Which Relief May Be Granted

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a complaint, or a portion thereof, that fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Thus, although a complaint need not contain detailed factual allegations, it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, —U.S.—, 129 S.

Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557) (alterations in original). At bottom, a complaint must contain sufficient factual matter that, accepted as true, would allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### III. ANALYSIS

Plaintiffs' claims fall into two categories. First, they argue that FTEPA violates several different constitutional provisions. Second, they challenge the FAA's interpretation of FTEPA under the APA. The Court turns first to plaintiffs' constitutional claims.

**A.     Plaintiffs' Constitutional Challenges**

All of plaintiffs' constitutional claims are aimed at FTEPA's nonretroactivity and protection-for-compliance provisions. Plaintiffs allege that these provisions violate the Equal Protection Clause, the Due Process Clause, the Takings Clause, and the Bill of Attainder Clause. This is not the first time that such arguments have been leveled at FTEPA. In *Avera v. United Air Lines*, 686 F. Supp. 2d 1262 (N.D. Fla. 2010), the court rejected due process, equal protection, bill of attainder, takings, and right-to-seek-redress challenges to FTEPA. In *Jones v. Air Line Pilots Ass'n*, 713 F. Supp. 2d 29 (D.D.C. 2010), another judge of this district similarly rejected equal protection, due process, right-to-seek-redress, and bill of attainder attacks on the Act.[1] And, in *Weiland v. American Airlines, Inc.*, 2011 WL 925408 (C.D. Cal. Feb. 18, 2011), the court rejected, among other claims, a bill of attainder challenge to FTEPA. Plaintiffs

---

[1]     The D.C. Circuit affirmed the dismissal of *Jones*, but on other grounds. *See* 2011 WL 2417140, at *2–4.

4

acknowledge these decisions, but disagree with them, and observe that they are not binding on this Court. Because plaintiffs are correct on that point, s*ee Camreta v. Greene*, —U.S.—, 131 S. Ct. 2020, 2033 n.7 (2011), the Court will address each of plaintiffs' constitutional arguments in turn.

### 1.     Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating groups of people differently on the basis of arbitrary or irrational classifications. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008); *see Bolling v. Sharpe*, 347 U.S. 497, 499 (1954) (holding that the Equal Protection Clause applies to federal government action via the Fifth Amendment). Plaintiffs' complaint alleges that FTEPA runs afoul of that prohibition in two ways: first, by discriminating against older pilots by allowing them to be rehired only without accrued benefits or seniority (via the nonretroactivity provision); and second, by denying those same pilots the ability to seek judicial relief for the loss of those benefits and seniority (via the protection-for-compliance provision). *See* Compl. ¶¶ 352–360.

The parties agree that plaintiffs' equal protection claim is subject to rational basis review, *see* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 15; Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 29, under which the Court asks whether "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe ex rel Doe*, 509 U.S. 312, 320 (1993). The parties disagree, however, as to whether the Court may identify such a governmental purpose where Congress has not articulated one. Plaintiffs insist that the Court "[o]bviously" may not "supply a rational basis that the Congress was unable or unwilling to articulate itself." Pl.'s Opp'n at 29–30. However obvious

5

that proposition may be, it is incorrect. As defendants point out, the Supreme Court has "never require[d] a legislature to articulate its reasons for enacting a statute," and will uphold a statute under rational basis review unless the law's challengers can "negative *every conceivable basis* which might support it." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)) (emphasis added) (internal quotation marks omitted). Thus, defendants are free to offer, and the Court must accept, any rational governmental purpose that supports FTEPA's effect, regardless of whether Congress actually had that purpose in mind when enacting the law. *See id.* (citing *U.S. R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 179 (1980)).[2]

Plaintiffs' equal protection argument focuses on FTEPA's nonretroactivity provision.[3] As described above, that provision allows pilots who were already sixty when FTEPA was passed (but are not yet sixty-five) to fly again, but without any of the seniority or benefits to which their prior service would otherwise have entitled them. Meanwhile, pilots who had not yet turned sixty when the Act was passed are able to continue flying — and accruing benefits and

---

[2] For this reason, the Court does not address plaintiffs' repeated assertions that FTEPA's nonretroactivity provision was the brain-child of, or intended to benefit the members of, the Air Line Pilots Association, a union that represents active pilots. *See, e.g.*, Pls.' Opp'n at 21–22, 25, 27.

[3] In fact, plaintiffs fail to respond at all to defendants' argument that the protection-for-compliance provision passes the rational basis test. Accordingly, the Court will treat that argument — which the *Jones* court accepted, *see* 713 F. Supp. 2d at 36 — as conceded. *See Lewis v. District of Columbia*, 2011 WL 321711, at *1 (D.C. Cir. Feb. 2, 2011) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), *aff'd* 98 F. App'x 8 (D.C. Cir. 2004)) (internal quotation marks omitted)).

seniority — without interruption until their sixty-fifth birthdays. Defendants justify this effect as serving the legitimate purpose of preserving a calm labor market. They point out that allowing senior pilots to effectively un-retire and resume their places on the seniority list could have disruptive effects on other pilots and upset settled expectations regarding seniority and promotions. *See* Defs.' Mem. at 16–17.

Plaintiffs' only response is to assert that "the complete denial of prior status and salaries would not create or preserve 'harmony' but would produce inevitable discord in the workplace," by placing senior pilots under their formerly junior colleagues. Pls.' Opp'n at 30. But that argument asks the Court to conduct precisely the sort of "courtroom fact-finding" that is not allowed under rational basis review. *See Beach Commc'ns*, 508 U.S. at 315 ("[A] legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data."); *Jones*, 713 F. Supp. 2d at 36. Accordingly, the Court concludes that the nonretroactivity provision is justified by, and rationally related to, a legitimate governmental interest in labor peace. As the *Jones* court put it:

> Congress could rationally have decided that allowing all retired commercial pilots between the ages of sixty and sixty-four to return to their prior positions with full seniority would disrupt the airline pilots' labor hierarchy. Under most airlines' employment structures, the longest serving pilots have seniority over their less-experienced colleagues. Thus, without FTEPA's nonretroactivity provision, pilots reentering the labor force would force — or "bump" — all other employees down the seniority system. Indeed, this influx of labor could even lead to the termination of some junior pilots. It would have been rational for Congress to conclude that this significant bumping would upset current pilots, causing at least some labor disharmony. . . .
>
> [W]hile pilots may expect to be bumped by their more senior colleagues returning from leave or furlough, they would not expect to be bumped by those who had already retired.

713 F. Supp. 2d at 35–36 (internal citation omitted); *see also Avera*, 686 F. Supp. 2d at 1276 (holding that FTEPA's nonretroactivity provision has a rational basis); *cf. Lehnert v. Ferris Faculty Ass'n*, 500 U.S. 507, 519 (1991) (noting "the government's vital policy interest in labor peace"). Thus, plaintiffs' equal protection claims must be dismissed.

### 2. Due Process

The Court turns next to plaintiffs' due process claims. Plaintiffs first contend that FTEPA's nonretroactivity provision violates procedural due process, *see* Compl. ¶¶ 361–366, which prohibits the government from depriving people of life, liberty, or property without sufficient procedural safeguards. *See* U.S. CONST. amend. V; *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). But "the Supreme Court has made clear that the legislative *process* provides all the *process* that is constitutionally due before Congress may enact a provision" that alters a substantive entitlement to property. *Am. Bus Ass'n v. Rogoff*, 2011 WL 2314995, at *8 (D.C. Cir. June 14, 2011) (citing *Atkins v. Parker*, 472 U.S. 115, 128–30 (1985); *Bi–Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915); *Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 363 (D.C. Cir. 2007)). "Thus, the nonretroactivity provision's passage by Congress affords [plaintiffs] all the process due [to them]." *Jones*, 713 F. Supp. 2d at 36.

Moreover, even if procedural due process applied here, its safeguards would not be triggered because plaintiffs have failed to identify a protected property interest that FTEPA has infringed. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" (quoting U.S. CONST. amend. XIV)). Plaintiffs assert that they had such an interest in their accumulated "status, salary levels, and employment benefits." Pls.' Opp'n at

8

19. But, as defendants point out, "'[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiffs, who were subject to the original age-sixty rule from its inception in 1959 until FTEPA was enacted in 2007, had no legitimate reason to believe that they would be allowed to fly after their sixtieth birthdays at all, let alone with full seniority and benefits. Plaintiffs protest that the FAA did not consistently apply the age-sixty rule, sometimes allowing individual exceptions and sometimes exempting whole classes of pilots, but that fact merely bolsters the conclusion that plaintiffs could not have formed a settled, legitimate expectation regarding their ability to fly after age fifty-nine. Consequently, the Court concludes that plaintiffs had no property right in their status and seniority that could give rise to a procedural due process claim.[4]

The Court likewise rejects plaintiffs' argument that the nonretroactivity provision violates substantive due process by depriving them of "their right to work and earn a livelihood." Pls.' Opp'n at 18. As the *Jones* court explained, substantive due process claims receive the same

---

[4] Nor is the Court persuaded by plaintiffs' assertion that the enactment of FTEPA itself created a property interest in plaintiffs' seniority by "restor[ing] all pilots to full flying privileges." Pls.' Opp'n at 28. FTEPA's passage, of course, did no such thing, because the law includes the nonretroactivity provision that plaintiffs challenge here. Plaintiffs may have *hoped* that FTEPA would return them to their prior positions with full seniority, but that is precisely the sort of unilateral expectation that cannot create a protected property interest for due process purposes. *See Castle Rock*, 545 U.S. at 756. Likewise, the Court rejects plaintiffs' assertion that it should consider their property interest with reference to the status quo before the enactment of the age-sixty rule, *i.e.*, in 1959, because Congress's enactment of FTEPA reflects a conclusion that the age-sixty rule was never valid. Pls.' Opp'n at 27–28. FTEPA's new age limit may be based on a congressional conclusion that pilots are safe to fly until age sixty-five, but that fact neither establishes that the age-sixty rule was never constitutionally valid nor shows that plaintiffs had a legitimate expectation of flying with full seniority after their sixtieth birthdays.

rational basis review that is applied to equal protection claims. 713 F. Supp. 2d at 37 n.7 (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15 (1976)). Thus, for the reasons given above, *see supra* section III.A.1, the nonretroactivity provision does not violate plaintiffs' substantive due process rights.

Plaintiffs' due process challenge to the protection-for-compliance provision, *see* Compl. ¶¶ 367–369, fares no better. Plaintiffs argue that this provision (which, as described above, shields employers from liability for complying with FTEPA's requirements) is designed to prevent judicial review of the nonretroactivity provision's seniority-stripping effects. This argument fails for the reasons stated above: because plaintiffs had no protected property interest in their seniority or benefits, this provision, like the nonretroactivity provision, does not warrant procedural due process scrutiny for ostensibly depriving plaintiffs of those assets. And if plaintiffs have a protected interest in the causes of action that the protection-for-compliance provision restricts, that restriction survives due process scrutiny. *See Jones*, 713 F. Supp. 2d at 37 ("Although individuals do have a protected property interest in legal causes of action, such as those for age discrimination, 'the State remains free to create substantive defenses or immunities for use in adjudication — or to eliminate its statutorily created causes of action altogether. . . . In each case, the legislative determination provides all the process that is due.'" (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 432–33 (1982)) (omission in original) (internal citation omitted)); *Avera*, 686 F. Supp. 2d at 1273 ("Due process is not violated by the decision of Congress to declare that one who complies with federal law should not be liable for that

compliance."). Accordingly, plaintiffs' due process claims will be dismissed.[5]

### 3. Takings Clause

Plaintiffs next challenge the nonretroactivity and protection-for-compliance provisions as violations of the Takings Clause, which provides that no "private property be taken for public use, without just compensation." U.S. CONST. amend V. But, like procedural due process claims, takings claims are predicated on a deprivation of an existing property interest. *Bowen v. Pub. Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 55–56 (1986); *see Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 641 (1993) (stating that where due process arguments have failed, a takings claim is unlikely to succeed). As explained above, plaintiffs had no such interest in their status, seniority, or benefits. FTEPA took nothing from plaintiffs; rather, it gave them something that they did not have before — albeit something less than they hoped for. Plaintiffs have thus identified no interest that could serve as the basis for a takings claim, and count twelve of the complaint will be dismissed. *See Avera*, 686 F. Supp. 2d at 1274 (holding that FTEPA did not effect an unconstitutional taking because the plaintiff had no protected property interest).

### 4. Bill of Attainder

Plaintiffs' last constitutional claim alleges that FTEPA contravenes Article I's command that "No Bill of Attainder . . . shall be passed." U.S. CONST. art. I, § 9, cl. 3; *see* Compl.

---

[5] That includes plaintiffs' tenth and eleventh claims, which allege that FTEPA violates "the right to contract protected by the Due Process Clause of the Fifth Amendment." Compl. ¶¶ 371, 377. Plaintiffs fail to distinguish these claims from the due process claims presented in their eighth and ninth counts, discussed above. Indeed, as defendants note, almost all of plaintiffs' discussion of their right-to-contract claims does not deal with cases discussing that right, but rather retreads the due process arguments addressed here. *See* Pls.' Opp'n at 34. The Court thus concludes that these claims must also be dismissed for the reasons given above.

¶¶ 389–398. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977). Plaintiffs allege that FTEPA's nonretroactivity provision "imposes punitive measures" on them by depriving them of their seniority and benefits, as discussed above. This claim is wholly without merit.

"[A] law is prohibited under the bill of attainder clause 'if it (1) applies with specificity, and (2) imposes punishment.'" *Foretich v. United States*, 351 F.3d 1198, 1217 (D.C. Cir. 2003) (quoting *BellSouth Corp. v. FCC*, 162 F.3d 678, 683 (D.C. Cir. 1998)). If a law does the former but not the latter, it is not a bill of attainder. *See id*. at 1217, 1218. To determine whether a law imposes punishment, the courts consider three independent factors: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 852 (1984) (quoting *Nixon*, 433 U.S. at 473, 475–76, 478); *see Foretich*, 351 F.3d at 1218. Here, none of the three factors suggests that FTEPA is punitive.

As to the first factor, plaintiffs contend that legislative punishment has historically included "barriers to employment." That is true, but with a caveat: as the D.C. Circuit explained in *Foretich*, the Supreme Court has repeatedly "invalidated as bills of attainder legislation barring specified persons or groups from pursuing various professions, *where the employment bans were imposed as a brand of disloyalty*." *Foretich*, 351 F.3d at 1217 (emphasis added); *see Nixon*, 433 U.S. at 474–75. Here, of course, there is no suggestion that FTEPA resulted from a

12

congressional determination that plaintiffs are disloyal, traitorous, or in any way culpable for any crime, malfeasance, or omission. More importantly, FTEPA does not in fact bar plaintiffs from being pilots; on the contrary, it entitles them to serve as pilots when they were not previously able to do so, albeit under more constraints than they might wish. *See Jones*, 713 F. Supp. 2d at 38 ("FTEPA's nonretroactivity provision does not bar Jones from working as a commercial airline pilot. Rather, it simply regulates the circumstances under which Jones may engage in such work."). Plaintiffs were born too early to receive the full benefit of FTEPA, but "the failure to fall into a group of persons who benefit economically from an enactment is not 'within the historical meaning of legislative punishment.'" *Weiland*, 2011 WL 925408, at *7 (quoting *Selective Serv. Sys.*, 468 U.S. at 852). Simply put, FTEPA's nonretroactivity provision bears little resemblance to the "legislative bars to participation by individuals or groups in specific employments or professions" that the Supreme Court has previously invalidated. *See Selective Serv. Sys.*, 468 U.S. at 852 & n.9 (collecting cases); *Weiland*, 2011 WL 925408, at *7 (holding that FTEPA does not impose punishment); *Jones*, 713 F. Supp. 2d at 38 (same); *Avera*, 686 F. Supp. 2d at 1276 (same).

The second and third factors remove any doubt that FTEPA is not a bill of attainder. As discussed above, FTEPA's nonretroactivity provision furthers a legitimate governmental interest in a calm labor market. *See supra* section III.A.1; *see also Jones*, 713 F. Supp. 2d at 35–36. That interest is plainly "nonpunitive": it reflects neither a congressional desire to exact "retribution for past events" nor an intent "to deter future misconduct." *Selective Serv. Sys.*, 468 U.S. at 852. Further, plaintiffs have failed to identify any less burdensome means by which Congress could have raised the age limit while *also* protecting the settled expectations of pilots

13

who have operated under the age-sixty rule for decades. *See Nixon*, 433 U.S. at 482 (nonpunitive purpose test includes "inquir[y] into the existence of less burdensome alternatives by which [Congress] . . . could have achieved its legitimate nonpunitive objectives"). On the contrary, when choosing to raise the age limit, Congress had to choose one group of pilots — active or senior — to bear the cost of the resulting increase in the supply of commercial pilots. As discussed above, it made the rational choice to upset the status quo as little as possible. That choice does not burden plaintiffs so disproportionately as to suggest a punitive purpose. *See Selective Serv. Sys.*, 468 U.S. at 851 ("That burdens are placed on citizens by federal authority does not make those burdens punishment."). Likewise, there is simply no indication in the "legislative record," *id.* at 852, of an intent to punish.[6] Accordingly, the Court concludes that FTEPA's nonretroactivity provision is not a bill of attainder.[7]

**B.     Plaintiffs' APA Claims**

Whereas plaintiffs' constitutional claims focus on the seniority-stripping exception to the nonretroactivity provision, their APA claims turn on the other exception, which allows a pilot who had turned sixty before FTEPA's enactment to "serve as a pilot for an air carrier engaged in covered operations . . . [if] such person is in the employment of that air carrier in such operations

---

[6]     Indeed, plaintiffs' allegations that FTEPA's nonretroactivity clause was drafted to benefit active pilots by favoring them over senior pilots would seem to undermine rather than bolster their argument that FTEPA is punitive; allocating scarce resources to one group does not reflect an intention to exact "retribution for past events," nor "to deter future misconduct." *See Selective Serv. Sys.*, 468 U.S. at 852.

[7]     This analysis applies equally to the protection-for-compliance provision. Plaintiffs argue that this provision is punitive because it "is critical to the punitive purpose of the non-retroactivity provision." Pls.' Opp'n at 43. But, as described above, there is no such purpose. Thus, this Court joins the *Jones* court in holding that the protection-for-compliance provision is not a bill of attainder. *See Jones*, 713 F. Supp. 2d at 38.

14

on such date of enactment as a *required flight deck crew member*." 49 U.S.C. § 44729(e)(1)(A) (emphasis added). The term "required flight deck crew member" is not defined in the Act.

After FTEPA's enactment, FAA published a question it had received regarding the meaning of "required flight deck crew member," and the agency's answer:

> **Question #8**:
> A person turned age 60 before the enactment of The Fair Treatment for Experienced Pilots Act (the Act) on Dec. 13, 2007. That person was administering flight checks for a part 121 operator in the jumpseat of aircraft before enactment, and continues to do so today. Is that person a "required flight deck crewmember" within the meaning of Section (e) of the Act?
>
> **Answer**:
> The FAA believes that it is reasonable for an airline and others to construe "required flight deck crewmember" to include those check airmen who were over Age-60 and conducting checks from the jumpseat of aircraft operated by part 121 operators on and after enactment. . . .
>
> *The FAA does not administer any aspect of Section (e) of the Act and the FAA need not interpret that provision of the Act in order to administer safety standards because that provision is related to employment benefits and employment seniority issues.* Other sections of the Act reflect Congress's safety determination that, generally speaking, pilots can serve up to age 65 in part 121 operations. Because the FAA would administer such other sections and because the FAA has to conform its safety rules to those safety provisions of the Act, the FAA's interpretation of those other provisions would be given great deference by the courts. Again, however, Section (e) deals with economic issues regarding who retains certain economic benefits under a seniority system and who will be treated as a new hire for purposes of receiving financial compensation and other benefits from the airline. *Thus, our views on the meaning of Section (e) are merely advisory*.

Defs.' Mem. Ex. 1 ("FAA Q&A") at 6–7 (emphasis added).[8]

Plaintiffs challenge this answer on numerous grounds, alleging that it contravenes their constitutional rights and that it was promulgated without notice-and-comment procedures as

---

[8] "A check airman . . . is a person who is qualified, and permitted, to conduct flight checks or instruction in an airplane, in a flight simulator, or in a flight training device for a particular type airplane." 14 C.F.R. § 121.411(a)(1).

required by the APA. Defendants make several responses, including that plaintiffs lack standing to raise these claims. Because plaintiffs' standing goes to the Court's jurisdiction, the Court must resolve that issue before it can turn to the merits of plaintiffs' claims. *See AT&T Corp. v. FCC*, 317 F.3d 227, 237 (D.C. Cir. 2003).

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), the Supreme Court explained that "the irreducible constitutional minimum of standing" contains three elements: (1) injury in fact, (2) causation, and (3) redressability. *Id.* at 560–61. An injury in fact is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To confer standing, that injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (alterations in original) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)) (internal quotation marks omitted).

Here, plaintiffs argue that they were harmed by the FAA's answer because it ostensibly signaled FAA's intention not to enforce FTEPA's nonretroactivity provision. *See* Compl. ¶¶ 298–299. Plaintiffs apparently believe that FAA's answer enabled airlines to misinterpret or misapply the nonretroactivity provision without fear of consequence. *See* Pls.' Opp'n at 48. But their complaint alleges no such conduct on the part of any airline. Indeed, plaintiffs come nowhere close to the showing required to establish standing where, as here, the "asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*." *Lujan*, 504 U.S. at 562. In such cases, "it becomes the burden of the plaintiff to adduce facts showing that [the third party's] choices have been or will be made in such manner as to

16

produce causation and permit redressability of injury." *Id*. (citing *Warth v. Seldin*, 422 U.S. 490, 505 (1975)).  Plaintiffs' complaint is wholly devoid of such allegations.  Accordingly, plaintiffs lack standing to challenge the FAA's "interpretation" of the nonretroactivity provision, and their APA claims must be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion to dismiss must be granted, and this action will be dismissed in its entirety.  An appropriate order accompanies this memorandum opinion.


                                                Henry H. Kennedy, Jr.
                                                United States District Judge